UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
_____

JAMIE CHRISTOPHER ARNETT,

                Petitioner,               Case No. 1:18-cv-179

v.                                 Honorable Paul L. Maloney

THOMAS MACKIE,

                Respondent.

_____/

## REPORT AND RECOMMENDATION

       This is a habeas corpus action brought by a state prisoner under 28 U.S.C. § 2254. Petitioner Jamie Christopher Arnett is incarcerated with the Michigan Department of Corrections at the Oaks Correctional Facility (ECF) in Manistee, Michigan.  Following a three-day jury trial in the Tuscola County Circuit Court, Petitioner was convicted of twenty counts of first-degree criminal sexual conduct (CSC-I), Mich. Comp. Laws § 750.520b.  On January 2, 2014, the court sentenced Petitioner to concurrent prison terms of 25 years to 37 years, 6 months, on each count.

       On February 14, 2018, Petitioner filed his habeas corpus petition which raises four grounds for relief, as follows:

    I.      Petitioner was denied effective assistance of counsel and a fair trial where his attorney failed to object to the forensic interviewer and others vouching for the credibility of the child complainant.

    II.     The trial court erred in allowing into evidence the recorded interview of the child complainant with the forensic interviewer and Petitioner was deprived of effective assistance of counsel because his attorney did not object.

    III.    Petitioner received ineffective assistance of counsel because his attorney did not completely advise him of his chances of an acquittal.

IV.    Petitioner was deprived of his constitutional right to counsel because he
received ineffective assistance of counsel in the failure to his trial attorney
to consult with or call an expert pediatrics witness.

(Pet., ECF No. 1-1, PageID.18, 19.)  Respondent has filed an answer to the petition (ECF No. 4)

stating that the grounds should be denied because they are unexhausted or lack merit.  Upon review

and applying the standards of the Antiterrorism and Effective Death Penalty Act of 1996, Pub. L.

104-132, 110 Stat. 1214 (AEDPA), I find that the grounds are meritless.    Accordingly, I

recommend that the petition be denied.

## Discussion

I.    Factual allegations

The victim of Petitioner's criminal sexual conduct was his step-daughter.  She was

nine-years-old when she testified at Petitioner's trial.  (Trial Tr. I, ECF No. 15-5, PageID.244.)

She testified that, while her mother was away at work Petitioner, would put his private part in her

crotch.  (*Id*., PageID.247-248, 252.)  She testified his private part would go past the two pieces of

skin in her crotch and that it hurt.  (*Id*., PageID.248, 252.)  She said it happened twenty times.  (*Id*.)

She testified that he also put his private part in her butt.  (*Id*.)

On July 8, 2013, the victim disclosed the abuse to her grandmother by way of a

handwritten note which read:

Dear [grandmother],

I have to tell you something that I should of told you a long time ago and here it is.
My dad kept rape me.  I don't know why my dad kept rape me.  He tells me to go
on top of him and he said to keep it a secret but I have to tell.  You are the only one
to tell.

Love, [your granddaughter]

2

(Trial Tr. I, ECF No. 15-5, PageID.231-232; Pet'r's Appeal Br., ECF No. 15-9, PageID.383.)  The grandmother told her husband as well as the victim's father and step-mother.  (Trial Tr. I, ECF No. 15-5, PageID.232.)  They immediately called the police and Child Protective Services.  (*Id*.)

Deputy Michael Scarborough arrived at the grandmother's home within minutes. (*Id*., PageID.242.)  He secured the note and contacted the prosecutor to set up a forensic interview at the Tuscola County Child Advocacy Center (CAC).  (*Id*., PageID.242-243.)  Amber Spencer, executive director of the CAC, conducted a forensic interview of the victim just a couple of hours later.  (Trial Tr. II, ECF No. 15-6, PageID.265-268.)  The interview was recorded on DVD.  The DVD was played for the jury.

After the interview, the victim was examined by Sheri Clair, a certified sexual assault nurse examiner.  (*Id*., PageID.273-274.)  Nurse Clair found two small lacerations on the victim's labia minora.  (*Id*., PageID.274-276.)  Nurse Clair indicated that the lacerations were consistent with the reported abuse.  (*Id*.)  She also testified that the lacerations located on the labia minora were consistent with penetration of the labia.  (*Id*.)  Nonetheless, Nurse Clair could not rule out other causes.

While the victim was at the CAC, Petitioner was at the Tuscola County Sheriff's Office for an interview with Detective Robert Baxter.  (*Id*., PageID.280-281.)  The interview was recorded.  (*Id*.)  A DVD of the interview was played for the jury.  After the interview, Detective Baxter was notified of Nurse Clair's examination results.  (*Id*., PageID.282.)  Petitioner was then arrested.  (*Id*.)  The next morning, Detective Scott Jones interviewed Petitioner again.  (*Id*., PageID.287.)  Detective Jones testified regarding the content of that interview and his investigation of Petitioner's home thereafter.  (*Id*., PageID.287-289.)

The victim's grandmother and the victim's mother provided testimony during the trial regarding whether or not they believed the victim. The forensic interviewer was also asked whether the victim's interview responses appeared to be truthful. All three testified that they found the victim to be credible.

The jury deliberated for a few hours before finding Petitioner guilty of all twenty counts of CSC-I, as charged. During their deliberations, the jurors were permitted to view the DVD of the victim's CAC interview as well as the DVD of Petitioner's initial police interview.

Petitioner, with the assistance of counsel, raised the same four issues on direct appeal to the Michigan Court of Appeals that he raises in his petition. Petitioner sought a remand to the trial court to develop a record regarding Petitioner's claim that his trial counsel advised Petitioner to reject a plea offer "because the prosecutor did not have a case." (Mot. to Remand, ECF No. 15-9, PageID.407.) Petitioner also hoped to develop a record at the trial court to support his claim that trial counsel was ineffective for failing to call an expert in pediatrics. (*Id.*, PageID.407-409.) The court of appeals granted Petitioner a remand with respect to trial counsel's advice regarding the plea offer, but denied the motion to remand in all other respects. (Mich. Ct. App. Ord., ECF No. 15-9, PageID.451.)

Petitioner's appellate counsel filed a motion relating to the remand in the trial court on October 3, 2014. October 3 was one day too late according to the trial court; therefore, the trial court denied the motion as untimely. (Tuscola Cty. Cir. Ct. Order, ECF No. 15-9, PageID.486.)

The Michigan Court of Appeals rejected Petitioner's challenges to his convictions by unpublished opinion issued April 28, 2015. (Mich. Ct. App. Op., ECF No. 15-9, PageID.359-362.)

4

Petitioner then filed a *pro per* application for leave to appeal in the Michigan Supreme Court.  He raised the four issues from his court of appeals brief and three new issues:

V.      [Petitioner's counsel had a] conflict of interest due to . . . counsel having applied for a job [in the prosecutor's office] shortly before trial began.

VI.     Prosecution was leading . . . the victim . . . and fabricating lies about [Petitioner] to determine the jury's view of [Petitioner].

VII.    The victim has stated to several witnesses that she lied about the statements made in court against the defendant.

(Pet'r's Appl. for Leave to Appeal, ECF No. 15-10, PageID.505, 507, 509.)  By order entered December 23, 2015, the supreme court denied leave as to all issues except Petitioner's Issue I. (Mich. Order, ECF No. 15-10, PageID.489.)  With respect to Issue I, regarding witness-vouching and the associated ineffective assistance of counsel claim, in lieu of granting leave to appeal, the court vacated the court of appeals' decision and remanded the case to the court of appeals for further consideration in light of *People v. Douglas*, 496 Mich. 557 (2014).  (*Id.*)  In *People v. Douglas*, the Michigan Supreme Court considered, and resolved in favor of the defendant, the same issues that Petitioner raises as habeas issues I and II.

The Michigan Court of Appeals issued an opinion on remand on May 10, 2016. (Mich. Ct. App. Op. on Remand, ECF No. 15-9, PageID.353-357.)  Taking *Douglas* into account, the court of appeals renewed its affirmance of the trial court's judgment of conviction.

Petitioner again turned to the Michigan Supreme Court for relief.  Petitioner filed a new application for leave to appeal raising Issue I, plus a new issue challenging his sentence because it was based on "judge-found" facts.  (Pet'r's Appl. for Leave to Appeal after Remand, ECF No. 15-11, PageID.586-594.)  The Michigan Supreme Court denied leave by order entered November 30, 2016.  (Mich. Order after Remand, ECF No. 15-11, PageID.585.)

Petitioner then filed the instant petition raising the four issues set forth above. Petitioner sought a stay so that he might return to the trial court and file a motion for relief from judgment. Petitioner has since withdrawn that request and asked this Court to proceed with just the four issues set forth above.

II.    AEDPA standard

This action is governed by the Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. 104-132, 110 Stat. 1214 (AEDPA). The AEDPA "prevents federal habeas 'retrials'" and ensures that state court convictions are given effect to the extent possible under the law. *Bell v. Cone*, 535 U.S. 685, 693-94 (2002). An application for writ of habeas corpus on behalf of a person who is incarcerated pursuant to a state conviction cannot be granted with respect to any claim that was adjudicated on the merits in state court unless the adjudication: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." 28 U.S.C. § 2254(d). This standard is "intentionally difficult to meet." *Woods v. Donald*, 575 U.S. __, 135 S. Ct. 1372, 1376 (2015) (internal quotation omitted).

The AEDPA limits the source of law to cases decided by the United States Supreme Court. 28 U.S.C. § 2254(d). This Court may consider only the holdings, and not the dicta, of the Supreme Court. *Williams v. Taylor*, 529 U.S. 362, 412 (2000); *Bailey v. Mitchell*, 271 F.3d 652, 655 (6th Cir. 2001). In determining whether federal law is clearly established, the Court may not consider the decisions of lower federal courts. *Williams*, 529 U.S. at 381-82; *Miller v. Straub*, 299 F.3d 570, 578-79 (6th Cir. 2002). Moreover, "clearly established Federal law" does not include decisions of the Supreme Court announced after the last adjudication of the merits in state court.

*Greene v. Fisher*, 565 U.S. 34, 37-38 (2011).  Thus, the inquiry is limited to an examination of the legal landscape as it would have appeared to the Michigan state courts in light of Supreme Court precedent at the time of the state-court adjudication on the merits.  *Miller v. Stovall*, 742 F.3d 642, 644 (6th Cir. 2014) (citing *Greene*, 565 U.S. at 38).

A federal habeas court may issue the writ under the "contrary to" clause if the state court applies a rule different from the governing law set forth in the Supreme Court's cases, or if it decides a case differently than the Supreme Court has done on a set of materially indistinguishable facts.  *Bell*, 535 U.S. at 694 (citing *Williams*, 529 U.S. at 405-06).  "To satisfy this high bar, a habeas petitioner is required to 'show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'"  *Woods*, 135 S. Ct. at 1376 (quoting *Harrington v. Richter*, 562 U.S. 86, 103 (2011)).  In other words, "[w]here the precise contours of the right remain unclear, state courts enjoy broad discretion in their adjudication of a prisoner's claims."  *White v. Woodall*, 572 U.S. 415, 424 (2014) (internal quotations omitted).

The AEDPA requires heightened respect for state factual findings.  *Herbert v. Billy*, 160 F.3d 1131, 1134 (6th Cir. 1998).  A determination of a factual issue made by a state court is presumed to be correct, and the petitioner has the burden of rebutting the presumption by clear and convincing evidence.  28 U.S.C. § 2254(e)(1); *Lancaster v. Adams*, 324 F.3d 423, 429 (6th Cir. 2003); *Bailey*, 271 F.3d at 656.  This presumption of correctness is accorded to findings of state appellate courts, as well as the trial court.  *See Sumner v. Mata*, 449 U.S. 539, 546 (1981); *Smith v. Jago*, 888 F.2d 399, 407 n.4 (6th Cir. 1989).

III.    Improper Admission of Hearsay Evidence

In Petitioner's first habeas issue he contends that the trial court should not have admitted the CAC interview of the victim.  The prosecutor offered the interview, which would otherwise be excluded as hearsay under Michigan Rule of Evidence 802, into evidence under Michigan Rule of Evidence 803A, which states:

> A statement describing an incident that included a sexual act performed with or on the declarant by the defendant or an accomplice is admissible to the extent that it corroborates testimony given by the declarant during the same proceeding, provided:
>
> (1) the declarant was under the age of ten when the statement was made;
>
> (2) the statement is shown to have been spontaneous and without indication of manufacture;
>
> (3) either the declarant made the statement immediately after the incident or any delay is excusable as having been caused by fear or other equally effective circumstance; and
>
> (4) the statement is introduced through the testimony of someone other than the declarant.
>
> If the declarant made more than one corroborative statement about the incident, only the first is admissible under this rule.
>
> A statement may not be admitted under this rule unless the proponent of the statement makes known to the adverse party the intent to offer the statement, and the particulars of the statement, sufficiently in advance of the trial or hearing to provide the adverse party with a fair opportunity to prepare to meet the statement.
>
> This rule applies in criminal and delinquency proceedings only.

Mich. R. Evid. 803A.

The prosecutor filed a motion to admit the CAC interview statements a week before the trial.  (Mot. to Admit Statements, ECF No. 15-3.)  The day before trial, the court held a hearing on the motion.  Petitioner's counsel initially objected to the admission of the CAC interview statements.  (Mot. Hr'g Tr., ECF No. 15-4, PageID.174.)  At the hearing, however, counsel withdrew his objection because he concluded that the statements that the prosecutor intended to

introduce were admissible under Rule 803A and because counsel intended to use the victim's

interview statements to impeach her anyway.  (*Id.*, PageID.174-175.)  Because Petitioner was not

opposed to the prosecutor's motion, the trial court granted it and directed the prosecutor to prepare

an order.  The order was entered on November 13, 2013.  (Tuscola Cty. Cir. Ct. Docket Sheet,

ECF No. 15-1, PageID.155.)

Petitioner contends the trial court should not have admitted the interview.  The crux

of his argument is that admission of the interview violated the Michigan Rules of Evidence.

According to Petitioner, the interview was properly excluded as hearsay and did not fit the "tender

years" exception of Rule 803A because it was not the victim's first corroborative statement.

Petitioner contends that the letter to the victim's grandmother was the first corroborative statement.

The Michigan Court of Appeals rejected Petitioner's claim:

> [A]lthough defendant argues that the trial court erred in admitting the contents of
> the forensic interview of the complainant, the record shows that defendant waived
> his hearsay objection to this evidence.  A waiver is the intentional relinquishment
> of a known right, and it extinguishes any error.  *People v. Carter*, 462 Mich 206,
> 215-216; 612 NW2d 144 (2000).  A party who expressly agrees with an issue in the
> trial court cannot expect relief on appeal because error warranting reversal cannot
> be predicated on that to which the aggrieved party contributed by plan or
> negligence.  *People v. Jordan*, 275 Mich App 659, 666; 739 NW2d 706 (2007),
> citing *People v. Griffin*, 235 Mich App 27, 46; 597 NW2d 176 (1999).  A counsel's
> statement of "no objection" may, in some cases, be the equivalent of "I approve"
> and constitute a waiver of objection.  *People v. Kowalski*, 489 Mich 488, 504-05;
> 803 NW2d 200 (2011).
>
> In this case, defendant withdrew his objection to admission of the evidence during
> a pretrial motion hearing.  Indeed, defense counsel stated that he intended to use
> the contents of the interview to impeach complainant's trial testimony and expose
> inconsistencies.  Defense counsel also opined that the recording was admissible and
> explicitly stated that he no longer opposed admission of the evidence.  An appellant
> may not benefit from an alleged error that the appellant contributed to by plan or
> negligence.  *Jordan*, 275 Mich App at 666.

(Mich. Ct. App. Op., ECF No. 15-9, PageID.362.)

"[A] federal court may issue the writ to a state prisoner 'only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States.'"  *Wilson v. Corcoran*, 562 U.S. 1, 5 (2010) (quoting 28 U.S.C. § 2254(a)).  A habeas petition must "state facts that point to a 'real possibility of constitutional error.'"  *Blackledge v. Allison*, 431 U.S. 63, 75 n.7 (1977) (quoting Advisory Committee Notes on Rule 4, Rules Governing Habeas Corpus Cases). The federal courts have no power to intervene on the basis of a perceived error of state law.  *Wilson*, 562 U.S. at 5; *Bradshaw v. Richey*, 546 U.S. 74, 76 (2005); *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991); *Pulley v. Harris*, 465 U.S. 37, 41 (1984).  An inquiry whether evidence was properly admitted or improperly excluded under state law "is no part of the federal court's habeas review of a state conviction [for] it is not the province of a federal habeas court to re-examine state-court determinations on state-law questions."  *Estelle*, 502 U.S. at 67-68.

Petitioner attempts to transform his state evidentiary claim into one cognizable on habeas review by suggesting the admission of the interview rendered his trial unfair and, therefore, violated his due process rights.  State court applications of state court rules, whether or not they are violations of the state rules, can rise to the level of a due process violation if they offend some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental.  *Seymour v. Walker*, 224 F.3d 542, 552 (6th Cir. 2000) (quotation omitted); *accord Coleman v. Mitchell*, 268 F.3d 417, 439 (6th Cir. 2001); *Bugh v. Mitchell*, 329 F.3d 496, 512 (6th Cir. 2003).  Petitioner must show that the state court's evidentiary ruling was in conflict with a decision reached by the Supreme Court on a question of law or that the state court decided the evidentiary issue differently than the Supreme Court did on a set of materially indistinguishable facts.  *Sanders v. Freeman*, 221 F.3d 846, 860 (6th Cir. 2000).  Petitioner has not and cannot make that showing.

Petitioner has not identified any Supreme Court authority with materially indistinguishable facts that was resolved in favor of his position. Even if the interview were inadmissible hearsay under state law, its admission would not run afoul of clearly established federal law. "The first and most conspicuous failing . . . is the absence of a Supreme Court holding granting relief on [that] due process theory: that the admission of allegedly unreliable hearsay testimony violates the Due Process Clause. That by itself makes it difficult to conclude that the state court of appeals' decision 'was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States.'" *Desai v. Booker*, 732 F.3d 628, 630 (6th Cir. 2013) (quoting 28 U.S.C. § 2254(d)). Accordingly, Petitioner cannot show that the state appellate court's determination of his hearsay claim is contrary to, or an unreasonable application of, clearly established federal law and he is not entitled to habeas relief.

IV.    Ineffective Assistance of Counsel

Petitioner's remaining habeas issues are all founded on claims that his trial counsel rendered constitutionally ineffective assistance. In *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984), the Supreme Court identified two elements necessary to establish a claim of ineffective assistance of counsel: the petitioner must prove: (1) that counsel's performance fell below an objective standard of reasonableness; and (2) that counsel's deficient performance prejudiced the defendant resulting in an unreliable or fundamentally unfair outcome. A court considering a claim of ineffective assistance must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689. The defendant bears the burden of overcoming the presumption that the challenged action might be considered sound trial strategy. *Id.* (citing *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)); *see also Nagi v. United States*, 90 F.3d 130, 135 (6th Cir. 1996) (holding that counsel's strategic decisions were hard to attack). The court

must determine whether, in light of the circumstances as they existed at the time of counsel's actions, "the identified acts or omissions were outside the wide range of professionally competent assistance." *Strickland*, 466 U.S. at 690.  Even if a court determines that counsel's performance was outside that range, the defendant is not entitled to relief if counsel's error had no effect on the judgment.  *Id.* at 691.

Moreover, as the Supreme Court repeatedly has recognized, when a federal court reviews a state court's application of *Strickland* under § 2254(d), the deferential standard of *Strickland* is "doubly" deferential.  *Harrington*, 562 U.S. at 105 (citing *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009)); *see also Burt v. Titlow*, 571 U.S. 12, 13 (2013); *Cullen v. Pinholster*, 563 U.S. 170, 190 (2011); *Premo v. Moore*, 562 U.S. 115, 122 (2011).  In those circumstances, the question before the habeas court is "whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard."  *Id.*; *Jackson v. Houk*, 687 F.3d 723, 740-41 (6th Cir. 2012) (stating that the "Supreme Court has recently again underlined the difficulty of prevailing on a *Strickland* claim in the context of habeas and AEDPA . . . .") (citing *Harrington*, 562 U.S. at 102).

### A.    Waiving Petitioner's Hearsay Objection to the CAC Interview

Consideration of the merits of any hearsay objection to admission of the CAC interview was foreclosed by counsel's waiver of the issue before trial.  *See* § III, above.  Anticipating that result, Petitioner argues that counsel rendered ineffective assistance when he waived the objection.  The court of appeals rejected that argument:

> In this case, defendant withdrew his objection to admission of the evidence during a pretrial motion hearing.  Indeed, defense counsel stated that he intended to use the contents of the interview to impeach complainant's trial testimony and expose inconsistencies.  Defense counsel also opined that the recording was admissible and explicitly stated that he no longer opposed admission of the evidence.  An appellant may not benefit from an alleged error that the appellant contributed to by plan or negligence.  *Jordan*, 275 Mich App at 666.

Additionally, defendant suggests that counsel's decision with respect to the admission of the forensic interview deprived him of the effective assistance of counsel. But as discussed above, defense counsel explained that he intended to use the contents of the forensic interview to note inconsistencies with complainant's trial testimony and as impeachment evidence. A reviewing court will not substitute its judgment of trial strategy for that of counsel with the benefit of hindsight, even where the strategy may have been mistaken. *Unger*, 278 Mich App at 242-243; *People v. Rice (On Remand)*, 235 Mich App 429, 445; 597 NW2d 843 (1999). Defendant has not overcome the presumption that his trial counsel provided effective assistance. *Trakhtenberg*, 493 Mich. at 52.

(Mich. Ct. App. Op., ECF No. 15-9, PageID.362.)

To prevail, Petitioner must show that there is no reasonable argument that his counsel satisfied *Strickland*'s deferential standard. The court of appeals noted that counsel offered two reasons for his waiver of the hearsay objection. First, counsel stated that he believed the interview would be admissible under Rule 803A. Second, counsel explained that he wanted to have the interview available to him, in its entirety, to permit him to highlight potential inconsistencies in the victim's accounts of the sexual assaults or to impeach her. Petitioner attacks both reasons.

Petitioner contends the interview was not admissible under Rule 803A because it was not the victim's first corroborative statement—the letter was. In *People v. Katt*, 662 N.W.2d 12 (Mich. 2003), the Michigan Supreme Court identified the purpose of favoring a child's first corroborative statement: "[T]he tender-years rule prefers a child's first statement over later statements . . . [because a]s time goes on, a child's perceptions become more and more influenced by the reactions of the adults with whom the child speaks." *Id*. at 26. Because there are circumstances where a second statement might not run afoul of that purpose, the Michigan courts have demonstrated flexibility in admitting testimony, even where an argument can be made that the statement is not the first. *See, e.g., Katt*, 662 N.W.2d at 26; *People v. Pittman*, No. 317461, 2015 WL 4988070, at *2 (Mich. Ct. App., Aug. 20, 2015); *People v. Bowman*, No. 270342, 2008

241113 (Mich. Ct. App. Jan. 29, 2008); *People v. Triplett*, No. 252929, 2005 WL 356251 (Mich. Ct. App. Feb. 15, 2005); *People v. Thatcher*, No. 238361, 2003 WL 22092582 (Mich. Ct. App. Sept. 9, 2003).  That flexibility is not unlimited.  *See, e.g., People v. Douglas*, 852 N.W.2d 587 (Mich. 2014); *People v. Bailey*, No. 338351, 2019 WL 1085472, at *2 (Mich. Ct. App. Mar. 7, 2019); *People v. Duncan*, Nos. 324385, 324397, 2016 WL 2731090 (Mich. Ct. App. May 10, 2016); *People v. Taylor*, No. 280228, 2009 WL 1101386 (Mich. Ct. App. Apr. 23, 2009) *People v. Davis,* No. 288005, 2009 WL 3931314 (Mich. Ct. App. Nov. 19, 2009); *People v. Johnson*, No. 183334, 1997 WL 33352885 (Mich. Ct. App. Apr. 4, 1997).  Where resolution of that key inquiry is uncertain, Petitioner has failed to show that counsel's conclusion that the statement was admissible was necessarily unreasonable.

Moreover, counsel's strategy to attempt to demonstrate inconsistencies between the victim's initial disclosure and her trial testimony is a strategy employed in virtually every criminal sexual conduct defense.  *See, e.g., People v. Sweeney*, No. 339500, 2019 WL 846102, at *2 (Mich. Ct. App. Feb. 21, 2019) ("[D]efense counsel, throughout the course of the trial, attempted to impeach the victim's credibility by pointing out inconsistencies between the victim's earlier interview with Kid-TALK and the victim's trial testimony."); *People v. Jackson*, No. 339898, 2019 WL 691678, at *2 (Mich. Ct. App. Feb. 19, 2019) ("Defendant emphasizes inconsistencies between the complainant's trial testimony and prior statements she made during a Kids-TALK interview and at defendant's preliminary examination.").  The court of appeals' conclusion that counsel's employment of that strategy here was not professionally unreasonable is unassailable, even if, in hindsight, the strategy did not work to Petitioner's benefit.

Petitioner claims that counsel's conduct was unreasonable because, after announcing the strategy, he never used the interview to demonstrate inconsistencies in the victim's

two accounts.  But, Petitioner does not identify any such inconsistencies.  Instead, he asks for a transcript of the interview in the hope that he might find some support for his argument.

Without the interview, counsel had no chance to cast doubt on the victim's credibility based on inconsistent accounts.  The note and the CAC interview were the only previous disclosures.  Counsel, by ensuring the interview would be available to him, at least guaranteed he would have a chance to identify inconsistencies for the jury.  Of course, preserving the chance to point out inconsistencies did not guarantee that the victim's accounts would, in fact, be inconsistent.  But, counsel's conduct must be evaluated at the time his decisions are made, not after the fact.  *Strickland*, 466 U.S. at 690 ("[A] court deciding an actual ineffectiveness claim must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct.").  Moreover, even though counsel did not identify inconsistencies, he still challenged the victim's testimony.  (Trial Tr. II, ECF No. 15-6, PageID.310-311.)  He focused on the lack of depth and specificity in her claims instead, a fault that is shared in the victim's interview and her trial testimony.  (*Id*.)

In *Bell*, 535 U.S. at 685, the Supreme Court discouraged the type of argument Petitioner raises:

> We cautioned in *Strickland* that a court must indulge a "strong presumption" that counsel's conduct falls within the wide range of reasonable professional assistance because it is all too easy to conclude that a particular act or omission of counsel was unreasonable in the harsh light of hindsight.  466 U.S., at 689.

*Bell*, 535 U.S. at 702.  Therefore, the Michigan Court of Appeals' rejection of Petitioner's argument—an argument that relies entirely on hindsight—is neither contrary to, nor an unreasonable application of clearly established federal law.

Moreover, to the extent Petitioner intends to proceed with a new claim of ineffective assistance premised on trial counsel's failure to introduce evidence of inconsistencies

in the victim's accounts—a claim he raises for the first time in his reply brief—he must first exhaust that claim in the state courts.  This Court may not grant habeas relief on a claim unless Petitioner has exhausted the remedies available in the state courts.  28 U.S.C. § 2254(b)(1).

Accordingly, Petitioner is not entitled to habeas relief on his ineffective assistance claim regarding counsel's failure to effectively object to, or properly utilize, the CAC interview.

## B.    Failure to Properly Inform Petitioner About Plea Offers

The record discloses that Petitioner twice rejected pretrial plea bargain offers. Petitioner claims he rejected the offers because his trial counsel misled him regarding the relative strengths of the prosecutor's case and Petitioner's defense.  Although Petitioner has not provided an affidavit disclosing what counsel told him, Petitioner's appellate counsel provided an offer of proof that states as follows:

1.    On November 12, 2013, the day before the trial began, the defendant's trial attorney, Matthew Frey, told the Defendant that the prosecutor had offered a plea agreement in which he would plead guilty to three counts of third-degree criminal sexual conduct and the twenty counts of first-degree criminal sexual conduct would be dismissed.

2.    The Defendant asked Mr. Frey whether he should accept the offer.  Mr. Frey advised the Defendant to not accept the offer because the prosecutor did not have a case.

3.    Mr. Frey told the Defendant that the likely minimum sentence if he accepted the offer would be between four and seven years.

(Pet'r's Offer of Proof, ECF No. 15-9, PageID.449-450.)

The Michigan Court of Appeals recognized that the record, as initially presented to that court, was not sufficient to support Petitioner's claim.  The court remanded the matter to the trial court "to allow defendant to bring a motion for appropriate relief and to have an evidentiary hearing on that claim."  (Mich. Ct. App. Order, ECF No. 15-9, PageID.451.)  The court of appeals gave Petitioner 14 days to file his motion.  (*Id.*)  He filed his trial court motion in the court of

appeals on the fourteenth day, *see* https://courts.michigan.gov/opinions_orders/case_search (search Mich. Ct. App. Docket No. 320095, last visited Mar. 17, 2019), but, he filed one day late in the trial court and his motion was denied for that reason.  (Tuscola Cty. Cir. Ct. Order, ECF No. 15-9, PageID.486.)

The court of appeals concluded it did not need to address Petitioner's plea-based ineffective assistance claim for two reasons: first, because Petitioner had failed to pursue the evidentiary hearing that the court of appeals deemed necessary to support his claim; and second, because "appellate defense counsel . . . conceded that [the] issue [was] without merit and that he was no longer pursuing it."  (Mich. Ct. App. Op., ECF No. 15-9, PageID.362.)  It is not apparent from the record—or the court of appeals docket—how or when appellate counsel communicated his intention to abandon the issue.  *See* https://courts.michigan.gov/opinions_orders/case_search (search Mich. Ct. App. Docket No. 320095, last visited Mar. 17, 2019); (Mich. Ct. App. Documents, ECF No. 15-9).  It may be the case that counsel's concession was simply the natural consequence of not having a factual record upon which to build the plea-based ineffective assistance of counsel claim.

Respondent argues that the issue remains unexhausted.  (Respondent's Br., ECF No. 14, PageID.114.)  Petitioner concedes that the claim is unexhausted in his reply.  (Pet'r's Reply Br., ECF No. 16, PageID.609.)  The undersigned disagrees and concludes the issue has been exhausted in the state courts.

Exhaustion requires a petitioner to "fairly present" federal claims so that state courts have a "fair opportunity" to apply controlling legal principles to the facts bearing upon a petitioner's constitutional claim.  *See O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999); *Picard v. Connor*, 404 U.S. 270, 275-77 (1971) (cited by *Duncan v. Henry*, 513 U.S. 364, 365 (1995) and

*Anderson v. Harless*, 459 U.S. 4, 6 (1982)).  To fulfill the exhaustion requirement, a petitioner must have fairly presented his federal claims to all levels of the state appellate system, including the state's highest court.  *Duncan*, 513 U.S. at 365-66; *Wagner v. Smith*, 581 F.3d 410, 414 (6th Cir. 2009); *Hafley v. Sowders*, 902 F.2d 480, 483 (6th Cir. 1990).  "[S]tate prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process."  *O'Sullivan*, 526 U.S. at 845.

Petitioner fully briefed his plea-based ineffective assistance claim at the Michigan Court of Appeals and at the Michigan Supreme Court.  The fact that the record failed to factually support the claim, and that Petitioner failed to correct that defect, does not render his argument an "unfair presentation," it renders it an ineffective one.  Similarly, the fact that Petitioner's appellate counsel concluded the issue did not have merit may have prompted the appellate court to not address the issue, but it did not change the fact that Petitioner raised this federal constitutional claim in that court.  Moreover, although Petitioner abandoned his request for a stay in this Court, he has expressed his intention to pursue that issue in the state courts, not as a plea-based ineffective assistance of trial counsel claim, but as an ineffective assistance of appellate counsel claim. (Pet'r's Mot. for Stay, ECF No. 2.)

This Court will construe the court of appeals decision as a decision on the merits of the federal constitutional claim.  The appellate court recognized the need for factual support for the claim when it remanded the matter to the trial court for an evidentiary hearing.  The trial court's denial of Petitioner's motion for such a hearing left Petitioner's claim factually unsupported; therefore, the court of appeals rejected Petitioner's claim.

The two-part *Strickland* test applies to challenges to guilty pleas based on ineffective assistance of counsel, whether the ineffective assistance results in entering a plea, *Hill*

18

*v. Lockhart*, 474 U.S. 52, 58 (1985), or declining to enter a plea, *Lafler v. Cooper*, 566 U.S. 156, 162-164 (2012).   Regarding the first prong, the court applies the same standard articulated in *Strickland* for determining whether counsel's performance fell below an objective standard of reasonableness.   *Hill,* 474 U.S. at 58; *Lafler*, 566 U.S. at 162-164.   In analyzing the prejudice prong, "a defendant must show that but for the ineffective advice of counsel there is a reasonable probability that the plea offer would have been presented to the court . . . that the court would have accepted its terms, and that the conviction or sentence, or both, under the offer's terms would have been less severe than under the judgment and sentence that in fact were imposed."   *Lafler*, 566 U.S. at 164.

In *Lafler*, trial counsel advised the defendant to reject a plea offer on the grounds that he could not be convicted at trial.   *Id*. at 163.   Lafler's counsel apparently believed that, as a matter of law, one could not be convicted for assault with intent to murder where the victim was shot below the waist, or perhaps counsel believed there was a persuasive argument to that effect. *Id*. at 174.   Here, Petitioner asserts that trial counsel advised him to reject the plea offer because the offer suggested that "the prosecutor did not have a case."   (Pet'r's Offer of Proof, ECF No. 15-9, PageID.449.)

"[A]n erroneous strategic prediction about the outcome of a trial is not necessarily deficient performance."   *Lafler*, 566 U.S. at 174.   Here, however, such a prediction would be highly questionable.   Even if the victim fell silent on the stand, the prosecutor had the CAC interview as a backup.   Moreover, that interview and/or the victim's trial testimony would be corroborated by physical evidence in the form of labial abrasions through the testimony of the SANE Nurse.   The CSC-I charge required the prosecutor to demonstrate that the victim was under the age of thirteen years, that Petitioner was over the age of seventeen years, and that penetration, "however slight,"

19

occurred.  Mich. Comp. Laws §§ 750.520a (r) and 750.520b.  For counsel to say that the prosecutor had no case under those circumstances would appear to lean towards being professionally unreasonable conduct.  Nonetheless, the court of appeals rejection of the claim is eminently reasonable because there is no record evidence that counsel advised Petitioner to reject the plea offer nor is there record evidence that counsel said that the prosecutor did not have a case.  Petitioner has, therefore, failed to demonstrate that the state courts' determination of this issue is contrary to, or an unreasonable application of, *Lafler*.  Accordingly, he is not entitled to habeas relief.

## B.    Counsel's Failure to Obtain Dr. Guertin as an Expert

Sexual Assault Nurse Examiner Sheri Clair testified that she conducted a head to toe examination of the victim following the CAC interview.  (Trial Tr. II, ECF No. 15-6, PageID.273-274.)  Nurse Clair testified, because of the victim's age, protocol limited the examination to an external visual inspection of the victim's vaginal area.  Nurse Clair inspected the victim's labia majora, labia minora, vulvar region, and hymen.  (*Id*., PageID.274.)  She identified two lacerations on the inside of the victim's labia minora.  (*Id*., PageID.274-275.)

Nurse Clair also noted that the victim's hymen was intact.  (*Id*., PageID.275.)  Nurse Clair explained that the presence of an intact hymen did not foreclose the sexual assault alleged by the victim because full penetration—the extent of penetration that might injure the hymen—might not be physically possible given the size difference between the perpetrator and the victim.  (*Id*.)  Nonetheless, according to Nurse Clair, the location of the lacerations was consistent with penetration past the labia, even if full penetration did not occur.  (*Id*., PageID.275-276.)

On cross-examination, Nurse Clair acknowledged that other than the two lacerations, there was no evidence of trauma, and that the lacerations could have been caused by something other than a sexual assault.  (*Id*., PageID.276-277.)  On redirect, Nurse Clair also

explained that it is possible that even long-term abuse would not result in injuries that are identified upon examination.  (*Id.*, PageID.279.)

In light of Nurse Clair's testimony, Petitioner contends his counsel rendered ineffective assistance because counsel did not present expert testimony on Petitioner's behalf. Petitioner is very specific regarding the expert testimony counsel could have presented:

> 8.    Justice Markman, in a dissenting opinion in *People v. Andrew Audie Williams*, 495 Mich 955, 956; 843 NW2d 551 (2014), recites testimony from a *Ginther* hearing in which Dr. Stephen Guertin testified that there is a 94% to 96% chance that a single incident of sexual intercourse with a prepubertal child would result in a tear or transection of the hymenal ring, leaving a lasting visible abnormality. Further, he recites that Dr. Guertin testified that the reason sexual intercourse with a prepubertal child is so likely to leave such an abnormality is because the hymen during the prepubertal stage typically has a "maximum opening of 10 millimeters while "[t]he average penis is 35 millimeters . . . ." *Id.* fn. 3.
>
> 9.    Counsel has spoken to Dr. Guertin, who said that more accurately there is a 85% to 92 % chance that a single incident of sexual intercourse with a prepubertal child would result in a tear or transection of the hymenal ring, leaving a lasting visible abnormality.  This would only happen according to Dr. Guertin with full penetration of an adult penis into a child's vagina and that this is what had allegedly occurred in the case in which he testified, *People v Andrew Audie Williams*, supra. It is not entirely clear in the present case that this was the child's allegation. However, Dr. Guertin also told counsel that lacerations within the labia minor would heal within seven to ten days.  The SANE nurse testified that a child would heal "fairly quickly from this kind [of] laceration (tr. Vol. II, 73), but she could not say whether the lacerations had occurred within the last month before she saw the child. (tr., Vol. II, 74).  She could not give any estimate of when the injury occurred. (tr., Vol. II, 74).  The child was not able to say when the last assault occurred.  (tr., Vol. I, 264).  Dr. Guertin provided an article "Healing of Hymenal Injuries in Pre-pubertal and Adolescent Girls: A Descriptive Study" in the journal Pediatrics from 2007.  The article is submitted with the Defendant's brief as an appendix.  The conclusions are summarized on page 2 of the article.

(Mot. to Remand, ECF No. 15-9, PageID.407-408.)  Petitioner characterizes the absence of Dr. Guertin's testimony as the loss of a substantial defense.  (*Id.*)  The court of appeals disagreed:

> It is not always necessary, however, to retain an expert witness to counter the opposing party's expert because cross-examination may suffice. *Harrington v. Richter*, 562 U.S. 86, 111 (2011).  Here, defendant's counsel cross-examined the nurse examiner such that she conceded that the only injury she observed to complainant were two abrasions on her labia, which could have been caused by

falling, or scratching, or a finger.  She conceded that an intact hymen was commonly associated with virginity and that there were no signs of repeated trauma.  Defendant's counsel further elicited the conclusion that sexual trauma was only a possible cause of the abrasions and that the abrasions did not definitively indicate sexual trauma.

A failure to call a witness may only constitute ineffective assistance of counsel where it deprives the defendant of a substantial defense. *People v. Dixon*, 263 Mich App 393, 398; 688 NW2d 308 (2004).  Defense counsel's duty is to prepare, investigate, and present all substantial defenses. *In re Ayres*, 239 Mich App 8, 22; 608 NW2d 132 (1999).  A substantial defense is one that might have altered the outcome of the trial.  *People v. Chapo*, 283 Mich App 360, 371; 770 NW2d 68 (2009).  In this case, defendant's counsel was able to demonstrate to the jury that complainant did not have tearing in her hymenal ring and that there were no physical manifestations of repeated sexual trauma.  Through cross-examination, defendant's counsel presented to the jury the theory that physical examination did not demonstrate signs of sexual abuse.  Counsel again emphasized this point during closing argument.  Thus, counsel's performance did not deprive defendant of a defense regarding the lack of physical evidence.

Because of the "calculated risks" necessary to defend difficult cases, defense counsel is given wide discretion in matters of trial strategy.  *Unger*, 278 Mich App at 242.  Defense counsel's decisions are presumed sound trial strategy, and a reviewing court is not to substitute its judgment of trial strategy using the benefit of hindsight.  *Id*. at 242-243; *Strickland*, 466 U.S. at 689.  Counsel's decision regarding whether to call an expert witness is a matter of trial strategy.  *People v. Payne*, 285 Mich App 181, 190; 774 NW2d 714 (2009).  Defendant has not overcome the presumption that it was sound trial strategy to rely on plaintiff's expert to support the theory that physical evidence did not demonstrate sexual trauma instead of obtaining his own expert.

(Mich. Ct. App. Op., ECF No. 15-9, PageID.360.)

Decisions as to whether to call certain witnesses or what evidence to present are presumed to be a matter of trial strategy, and the failure to call witnesses or present evidence constitutes ineffective assistance of counsel only when it deprives a defendant of a substantial defense. *See Chegwidden v. Kapture*, 92 F. App'x 309, 311 (6th Cir. 2004); *Hutchison v. Bell*, 303 F.3d 720, 749 (6th Cir. 2002). A defense is substantial if it might have made a difference in the outcome of the trial. *Matthews v. Abramajtys,* 319 F.3d 780, 790 (6th Cir. 2003) (citing *Strickland*, 466 U.S. at 693-96).  The court of appeals determined that the absence of expert

testimony such as that Dr. Guertin would have provided did not deprive Petitioner of a substantial defense.

Certainly, the statistics Justice Markman reported in *People v. Williams*, 843 N.W.2d 551, 552 (Mich. 2014), might have helped Petitioner's defense; but, those statistics, as qualified by Dr. Guertin in discussion with Petitioner's appellate counsel, yield a much different result.  Dr. Guertin told Petitioner's appellate counsel that there is an 85% to 92% chance that a single incident of sexual intercourse would result in a tear or transection of the hymenal ring.  That frequency, however, applies only to full penetration of an adult penis into a child's vagina.  That was the complainant's allegation in *Williams*.  It is not the allegation here.  Indeed, Nurse Clair noted that full penetration might have been physically impossible.

Moreover, Petitioner's appellate counsel tacked on to the probability statement an assertion that such a tear would leave a lasting visible abnormality.  The article he attaches to his motion—an article provided by Dr. Guertin—indicates quite the opposite: "[t]he hymenal injuries in these prepubertal and adolescent girls all healed rapidly and frequently left little or no evidence of the previous trauma."  (Article, ECF No. 15-9, PageID.423.)  Thus, even accepting Petitioner's statement as to what Dr. Guertin could have said on Petitioner's behalf, it appears that Dr. Guertin would have only echoed Nurse Clair regarding the likelihood of hymenal injury absent full penile penetration and the limited significance of the absence of evidence of hymenal injury.  Under those circumstances, the appellate court's determination that trial counsel's conduct was not unreasonable is well-supported by the record and neither contrary to, nor an unreasonable application of, *Strickland*.  Accordingly, Petitioner is not entitled to habeas relief on this claim.

### D.    Failure to Object to Testimony Regarding Victim's Credibility

Finally, Petitioner complains that his counsel failed to object to three instances where the prosecutor elicited testimony from witnesses regarding the victim's veracity.  The

Michigan Court of Appeals explained that "because it is the province of the jury to determine the truthfulness of a witness, 'it is improper for a witness or an expert to comment or provide an opinion on the credibility of another person while testifying at trial.'"  (Mich. Ct. App. Op. Aft. Remand, ECF No. 15-9, PageID.354.)  Nonetheless, three witnesses—the victim's mother, the victim's grandmother, and the CAC interviewer—each provided her opinion of the victim's truthfulness.

The victim's grandmother testified as follows:

Q:    And do you find [the victim] to be a truthful child?

A:    Yes.  Very truthful.

(Trial Tr. I, ECF No. 15-5, PageID.230.)  The victim's mother testified as follows:

Q:    Do you believe your daughter?

A:    Yes, I do.

(Trial Tr. II, ECF No. 15-5, PageID.299.)  Petitioner's counsel elicited similar testimony from the victim's mother:

Q:    Okay.  Do you believe everything your daughter has alleged?

A:    Yes.

(*Id.*, PageID.300.)

The prosecutor elicited the same sort of testimony from the CAC interviewer as expert opinion:

Q:    Are you able based on your training and experience to form an opinion during an interview as to whether or not a child is being truthful with you?

A:    Yes.

Q:    What are things you look for?

A:    I—when we establish ground rules, are they able to tell the difference between a truth and a lie and correcting me.

> Q:    Were you able to do that with [the victim] then?
>
> A:    Yes.
>
> Q:    Based on your training and experience, do you have an opinion as to whether or not [the victim] told you the truth?
>
> A:    Based on my experience, I believe that she did tell the truth.

(Trial Tr. II, ECF No. 15-6, PageID.268.)

The court of appeals explained that such testimony was not admissible under Michigan evidentiary law:

> [B]ecause it is the province of the jury to determine the truthfulness of a witness, "'it is improper for a witness or an expert to comment or provide an opinion on the credibility of another person while testifying at trial.'" *Arnett*, unpub op at 1 (HOEKSTRA, J., concurring), quoting *People v. Musser*, 494 Mich 337, 349; 835 NW2d 319 (2013); See also *Arnett*, unpub op at 2, citing *People v. Dobek*, 274 Mich App 58, 71; 732 NW2d 546 (2007). "Such comments have no probative value ... because 'they do nothing to assist the jury in assessing witness credibility in its fact-finding mission and in determining the ultimate issue of guilt or innocence.'" *Musser*, 494 Mich. at 349 (citations omitted).

(Mich. Ct. App. Op. After Remand, ECF No. 15-9, PageID.354.)   The admission of such testimony, however, does not run afoul of clearly established federal law.

Interpreting the Federal Rules of Evidence, the Supreme Court in *United States v. Johnson*, 319 U.S. 503 (1943), considered the admissibility of expert testimony that was challenged because it "invaded the jury's province." *Id*. at 519.  The court was not troubled by the fact that the expert testified regarding ultimate issues:

> No issue was withdrawn from the jury. The correctness or credibility of no materials underlying the expert's answers was even remotely foreclosed by the expert's testimony or withdrawn from proper independent determination by the jury. The judge's charge was so clear and correct that no objection was made, though, of course, there were exceptions to the refusal to grant the usual requests for charges that were either redundant or unduly particularized items of testimony. The worth of our jury system is constantly and properly extolled, but an argument such as that which we are rejecting tacitly assumes that juries are too stupid to see the drift of evidence. The jury in this case could not possibly have been misled into the notion that they must accept the calculations of the government expert any more

25

> than that they were bound by the calculations made by the defense's expert based on the defendants' assumptions of the case. So long as proper guidance by a trial court leaves the jury free to exercise its untrammeled judgment upon the worth and weight of testimony, and nothing is done to impair its freedom to bring in its verdict and not someone else's, we ought not be too finicky or fearful in allowing some discretion to trial judges in the conduct of a trial and in the appropriate submission of evidence within the general framework of familiar exclusionary rules.

*Johnson*, 319 U.S. at 519-20.  Federal Rules of Evidence expressly state that "[a]n opinion is not objectionable just because it embraces an ultimate issue."  Fed. R. Evid. 704(a).  The parallel Michigan Rule of Evidence is virtually identical.  Mich. R. Evid. 704.  Federal Rule of Evidence 704 was passed for the express purpose of abolishing case law that opined witnesses could not express opinions on ultimate issues.  Advisory Committee Notes, Fed. R. Evid. 704.  In *United States v. Scheffer*, 523 U.S. 303 (1998), in a concurring opinion, Justice Kennedy quoted the Advisory Committee Notes to explain the change:

> The older cases often contained strictures against allowing witnesses to express opinions upon ultimate issues, as a particular aspect of the rule against opinions. The rule was unduly restrictive, difficult of application, and generally served only to deprive the trier of fact of useful information.  7 Wigmore §§ 1920, 1921; McCormick § 12.  The basis usually assigned for the rule, to prevent the witness from "usurping the province of the jury," is aptly characterized as "empty rhetoric."  7 Wigmore § 1920, p. 17.

*Scheffer*, 523 U.S. at 319.

That does not leave the permissible scope of expert opinion testimony without bound.  Federal Rule of Evidence 702—and the parallel Michigan rule—require that the opinion testimony help or assist "the trier of fact to understand the evidence or to determine a fact in issue . . . ."  Fed. R. Evid. 702; Mich. Rule Evid. 702.  Expert opinions that "merely tell the jury what result to reach" would be inadmissible under Rule 702.  Advisory Committee Notes, Fed. R. Evid. 704.

If the CAC interviewer had opined as to Petitioner's guilt, there is some authority that such opinion testimony would render a trial fundamentally unfair and violate due process.

*See, e.g., Cooper v. Sowders*, 837 F.2d 284, 287-88 (6th Cir. 1988).  However, *Cooper* was decided before enactment of the AEDPA.  It expressly relies upon: (1) state court authorities, rather than federal law as clearly established by the Supreme Court; and (2) the cumulation of error, a practice the Supreme Court has never held would support habeas relief.  *Scott v. Elo*, 302 F.3d 598, 607 (6th Cir. 2002) ("The Supreme Court has not held that constitutional claims that would not individually support habeas relief may be cumulated in order to support relief.").  The continuing vitality of *Cooper* after enactment of the AEDPA is questionable.  Since enactment of the AEDPA, courts often distinguish the *Cooper* decision.  *See, e.g., United States v. Cobb*, 397 F. App'x 128 (6th Cir. 2010); *Arnold v. Palmer*, No. 1:11-cv-840, 2016 WL 4442810 (W.D. Mich. July 25, 2016); *Sanford v. Smith*, No. 2:11-cv-10748, 2013 WL 5913948 (E.D. Mich. Oct. 24, 2013); *Dorsey v. Banks*, 749 F. Supp. 2d 715 (S.D. Ohio 2010).  Whatever persuasive force *Cooper* retains, it is not clearly established Supreme Court precedent and, thus, cannot form the basis for habeas relief.  Therefore, the admission of the opinion testimony regarding the victim's truthfulness does not, by itself, present a federal constitutional issue under clearly established federal law.

Of course, whether evidence is improperly admitted because it violates state law or because it violates federal constitutional law is immaterial when considering whether counsel's failure to object constituted ineffective assistance.  In Petitioner's case, because the questions that elicited the improper testimony violated state law, counsel could have raised a meritorious objection.  He did not.

The Michigan Court of Appeals identified a reason for counsel's failure to object, at least with respect to the testimony of the mother and the grandmother.  "Absent any contrary evidence in the record regarding defense counsel's trial strategy, the decision not to object may

have been a strategic choice to avoid drawing attention to, highlighting, or appearing to fear testimony that the complainant's family members believed her."  (Mich. Ct. App. Op. Aft. Remand, ECF No. 15-9, PageID.356.)

The Sixth Circuit has acknowledged that "not drawing attention to [an objectionable] statement may be perfectly sound from a tactical standpoint . . . ."  *United States v. Caver*, 470 F.3d 220, 244 (6th Cir. 2006).  Therefore, Petitioner has failed to demonstrate that the state appellate court's determination is unreasonable with respect to the truthfulness opinions of the victim's mother and grandmother and he is not entitled to habeas relief with regard to counsel's failure to object to that testimony.

The Michigan Court of Appeals concluded that it was professionally unreasonable for Petitioner's counsel to forego an objection to the CAC interviewer's opinion regarding the victim's veracity.  The court reasoned that the risk was simply too great "that a jury in a criminal sexual conduct case will 'hang its hat' on a 'seemingly objective' expert . . . ."  (Mich. Ct. App. Op. After Remand, ECF No. 15-9, PageID.356.)  Nonetheless, the court determined that the CAC interviewer's statement "was not likely to have rendered a different outcome reasonably probable . . . ."  (*Id.*)  The appellate court concluded that corroborating evidence in the form of lacerations on the victim's inner labia minora, testimony from the victim's brother that Petitioner would take the victim into Petitioner's bedroom and lock the door, and police testimony that there was a lock on Petitioner's bedroom door made a different outcome unlikely.  (*Id.*, PageID.357.)

Moreover, the trial court expressly instructed the jurors to make up their own minds about witness credibility, even expert witness credibility:

> As juror, you must decide what the facts of the case are.  This is your job and nobody else's. . . .  This includes whether you believe what each of the witnesses said.  What you decide about any fact in this case is final.

*    *    *

You must decide which witnesses you believe and how important you think their testimony is. You do not have to accept or reject everything a witness said. You are free to believe all, none or part of any person's testimony.

*    *    *

You have heard testimony from witnesses Amber Spencer and Sheri Clair who have given you their opinions as experts in the field of forensic interviewing of children and SANE/SART respectively. Experts are allowed to give opinions in court about matter they are experts on.

However, you do not have to believe an expert's opinion. Instead, you should decide whether you believe it and how important you think it is. When you decide whether you believe an expert's opinion, think carefully about the reasons and facts they gave for their opinion and whether those facts are true. You should also think about the expert's qualifications and whether their opinion makes sense when you think about the other evidence in the case.

(Trial Tr. II, ECF No. 15-6, PageID.317-319.) It is clearly established federal law that "[a] jury is presumed to follow its instructions." *See, e.g., Weeks v. Angelone*, 528 U.S. 225, 234 (2000).

The state court followed the correct analytical path to reach its answer. To determine prejudice, the court must "consider the totality of the evidence before the judge or jury." *Id*. at 695. The state court looked at all of the evidence to assess the likelihood that the interviewer's testimony made a difference. Moreover, in analyzing possible prejudice, the court of appeals answered the right question. *Strickland* requires a defendant to show "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. The court of appeals concluded that was not true in Petitioner's case.

Perhaps if this Court were to consider *de novo* the question of the effectiveness of counsel's conduct or the extent of any prejudice therefrom, it might reach a different conclusion. But, that is not the standard of review. The Court must doubly defer to the state court here. So long as the state appellate court's findings of fact are reasonable on the record, and its

determinations are not contrary to or an unreasonable application of *Strickland*, Petitioner is not entitled to habeas relief.

The state court's findings are eminently reasonable on the record and its determinations regarding the professional reasonableness of Petitioner's counsel's conduct and any prejudice resulting from that conduct are entirely consistent with *Strickland*. Considering the other corroborating evidence before the jury, and the clear instructions that the jurors alone were to judge credibility and could freely reject the expert's testimony, the state appellate court's conclusion that Petitioner suffered no prejudice from his counsel's failure to challenge the expert's testimony is consistent with *Strickland*. Accordingly, Petitioner is not entitled to habeas relief.

## **Certificate of Appealability**

Under 28 U.S.C. § 2253(c)(2), the Court must determine whether a certificate of appealability should be granted. A certificate should issue if Petitioner has demonstrated a "substantial showing of a denial of a constitutional right." 28 U.S.C. § 2253(c)(2). The Sixth Circuit Court of Appeals has disapproved issuance of blanket denials of a certificate of appealability. *Murphy v. Ohio*, 263 F.3d 466, 467 (6th Cir. 2001) (per curiam). Rather, the district court must "engage in a reasoned assessment of each claim" to determine whether a certificate is warranted. *Id.* Each issue must be considered under the standards set forth by the Supreme Court in *Slack v. McDaniel*, 529 U.S. 473 (2000). *Murphy*, 263 F.3d at 467. Consequently, I have examined each of Petitioner's claims under the *Slack* standard. Under *Slack*, 529 U.S. at 484, to warrant a grant of the certificate, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Id.* "A petitioner satisfies this standard by demonstrating that . . . jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537

U.S. 322, 327 (2003).  In applying this standard, the Court may not conduct a full merits review, but must limit its examination to a threshold inquiry into the underlying merit of Petitioner's claims.  *Id.*

I find that reasonable jurists could not conclude that this Court's dismissal of Petitioner's claims would be debatable or wrong.  Therefore, I recommend that the Court deny Petitioner a certificate of appealability.

## Recommended Disposition

For the foregoing reasons, I recommend that the habeas corpus petition be denied. I further recommend that a certificate of appealability be denied.

Dated:  May 2, 2019                                          /s/ Ray Kent
                                                             United States Magistrate Judge

## NOTICE TO PARTIES

Any objections to this Report and Recommendation must be filed and served within 14 days of service of this notice on you.  28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b).  All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b).  Failure to file timely objections may constitute a waiver of any further right of appeal.  *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *see Thomas v. Arn*, 474 U.S. 140 (1985).